**[J-110-2014][M.O. – Stevens, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| IN RE: PETITION TO SUBMIT BALLOT QUESTION TO CONCORD TOWNSHIP VOTERS | : No. 126 MAP 2014<br>:<br>: Appeal from the Order of Commonwealth<br>: Court at No. 1426 CD 2014 dated |
| DELAWARE COUNTY BOARD OF ELECTIONS, | : September 26, 2014 Affirming the order of<br>: the Delaware County Court of Common<br>: Pleas, Civil Division, at No. 2014-06512 |
| Intervenor | : dated August 14, 2014.<br>:<br>: |
| APPEAL OF: COLETTE BROWN | : SUBMITTED: November 21, 2014 |

**DISSENTING OPINION**

**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED:  July 20, 2015**

The majority concludes that Section 207 of the First Class Township Code,[1] 53 P.S. §55207, unambiguously permitted the filing of Appellant's petition, notwithstanding that such petition was submitted well after the occurrence of the first election at least ninety days after the ascertainment by United States census that Concord Township exceeded the population threshold for conversion to a first-class township.  According to the majority, the Commonwealth Court's contrary interpretation of the statute alters its plain language.  *See* Majority Opinion, *slip op.* at 13.  The majority also asserts that the statutory allowance for resubmission after an unsuccessful referendum "contradicts the opposing parties' claim that such questions may only be submitted immediately after the census or special enrollment."  *Id.* at 14*.*  In terms of policy, the majority relies upon "actual census data" reflecting strong population gains in the relevant geographic area,

---

[1] Act of June 24, 1931, P.L. 1206 (as amended, 53 P.S. §§55101-58502).

albeit post-dating the enactment of both the relevant statute and the salient amendments, as dispelling Appellees' position that Section 207 was designed to ensure a reasonably close temporal relationship between population ascertainments and a referendum concerning second-to-first-class-township conversion. *Id.* at 15.

In the first instance, I differ materially with the majority to the degree to which it characterizes Section 207 as plain and unambiguous. The relevant portion of the statute is comprised of five clauses disrupted by abnormal punctuation (in particular, the comma following the word "occurring"),[2] several of which clauses contain elements suggesting competing constructions.

A competing construction of this ambiguous statute, which was in essence adopted by the Commonwealth Court and the common pleas court, proceeds as follows. By mandating that a referendum be placed on the ballot at the first election after an ascertainment that the population of a second-class township met a certain threshold, the original (1931) statute unambiguously established that the referendum would proceed at an election which was reasonably contemporaneous with the ascertainment. *See* Act of June 24, 1931, P.L. 1206, art. II, §207; *accord* Majority Opinion, *slip op.* at 12-13. The General Assembly added the petition requirement, in

---

[2] This comma was absent from the statute as originally promulgated in 1931. *See* Act of June 24, 1931, P.L. 1206, art. II, §207. In 1941, the statute was modified to insert the clause ", or at a special election held," immediately after the word "occurring." *See* Act of July 24, 1941, P.L. 502, §1. This phrase was then removed in 1949; however, the amendments left one of the commas intact while omitting the other entirely (even from the interlineation ostensibly reflecting deletions). *See* Act of May 27, 1949, P.L. 1955, §2.

Accordingly, there appears to have been at least one drafting error attendant to the 1949 revisions, at the very least in terms of addressing the omitted comma in one fashion or another. From my point of view, particularly in light of the context, it appears to me that both commas should have been overtly removed (since the residual comma serves no apparent purpose, thus engendering uncertainty concerning its function).

1941, not to obviate this requirement of temporal relationship between ascertainment and the referendum, but rather, to simply make the referendum also conditional upon the filing of a petition by at least five percent of the registered voters. *See* Act of July 24, 1941, P.L. 502, §1.[3]

I find this position to be the more persuasive one. As the intermediate and common pleas courts suggested, it is supported by the proximity, within Section 207, of the statutory timing provision to the requirement for ascertainment. *See In re Petition to Submit Ballot Question to Concord Twp. Voters*, 100 A.3d 765, 767 (Pa. Cmwlth. 2014). Furthermore, I differ with the majority's assertion that the second appearance of the word "after" in Section 207 would need to be changed to "provided" to support such construction. *See* Majority Opinion, *slip op.* at 13. Rather, all that is required is to accept is that an appropriate petition must be filed to trigger the occurrence of a referendum at the time of the election specified in the statute (*i.e.*, "the first general or municipal election occurring, at least ninety days after the ascertainment" that the local population meets or exceeds the threshold for first-class township status, 53 P.S. §55207).[4] The majority's contrary construction effectively transposes the filing of a

---

[3] By contrast, the Assembly also added the special election provision in 1941, which amended Section 207 to allow submission of the second-to-first-class conversion question at the first general or municipal election, "or at a special election held," at least ninety days after an ascertainment. *See* Act of July 24, 1941, P.L. 502, §1. That addition did have the effect of creating an explicit exception to the "first election after" temporal requirement. As noted above in footnote 2, however, the Legislature removed the special election provision in 1949, suggesting an intent to reinstate that requirement on its terms.

[4] The requirement for action at some variation of the "first [or next] election occurring at least ninety days after" a specified event is prevalent throughout Pennsylvania law as pertaining to local governments. *See, e.g.,* 53 P.S. §35702; 53 P.S. §55209a; 53 P.S. §55251; 53 P.S. §55407; 53 P.S. §65202; 53 P.S. §6924.407; 53 Pa.C.S. §8703; 8 Pa.C.S. §231; and 8 Pa.C.S. §233. The underlying purpose is evident -- action under (continued…)

petition, in place of ascertainment, as the triggering event for determining the timing of the referendum, thus allowing for referendums remote from ascertainments. Respectfully, I believe it would require substantial linguistic adjustments to the statute to unambiguously convey such an intention on the part of the Legislature.

I also differ with the majority's indication that the statutory provision for resubmission directly contradicts Appellees' position. *See* Majority Opinion, *slip op.* at 13. While certainly I recognize that the potential for resubmission remote from population ascertainment is a factor militating in favor of the majority's construction, I do not agree that this suggests that *any* submission may be remote. Like many other archaic statutory regimes, there are multiple ambiguities and incongruities within the instant one. In such landscape, the resubmission factor, in my view at least, simply does not carry dispositive weight. I take this position particularly in light of the prescription for "special enrollment," *i.e.*, an interim (between decennial censuses) local population assessment triggered by a petition advanced by at least twenty-five percent of landowners within the subject township. *See* 53 P.S. §55205. In addition to establishing a predicate for a referendum after a decennial census which has failed to document a sufficient population increase, this procedure also serves to produce an ascertainment which would be substantially contemporaneous with the ensuing referendum, where no petition was filed within the requisite time period after a census-based ascertainment that the requisite population threshold had been met. *See* 53 P.S. §55207.

Nor do I agree with the majority to the degree to which it suggests that the policy consideration favoring a substantially contemporaneous ascertainment of population

---

(…continued)
these statutes is to be taken with some level of immediacy with respect to the designated operative event.

may be evaluated on a *post hoc* basis. *See* Majority Opinion, *slip op.* at 15. It appears to me that there were far greater uncertainties in the 1930s and 1940s concerning population fluctuations in the relevant geographic area, so that the benefits of a substantially contemporaneous ascertainment would have been of greater importance at the time this statutory scheme was enacted. *Accord In re Petition to Submit Ballot Question to Concord Twp. Voters*, 100 A.3d at 767 ("The phrase 'first election 90 days after [ascertainment of population]' operates as a clear time limitation which serves the necessary purpose of ensuring that the population density upon which the ballot question is based remains accurate when the matter is put to the voters."). In this regard, it is noteworthy that the Legislature did specifically provide for conversion of a first- to a second-class township, in light of population decreases. *See* 53 P.S. §§ 55209 - 55209a. Moreover, given that the statute applies statewide, a discrete local growth trend is not particularly relevant to its construction.

Ultimately, I agree with the Commonwealth Court, the common pleas court, Appellees, Intervenors (the county board and bureau of elections), and their *amici* that Section 207 is most readily read as conveying an intention to require that a referendum proceed within a time period which is reasonably contemporaneous with ascertainment. Thus, I would hold submission of a ballot question under the statute is appropriate only at the first general or municipal election occurring at least ninety days after a specified form of ascertainment demonstrates that the population of a second-class township meets the statutory threshold.

Accordingly, I respectfully dissent.


Madame Justice Todd joins this dissenting opinion.